**Andrew V. Wright (11071)**
  andy.wright@dentons.com
**Mark R. Nelson (13562)**
  mark.r.nelson@dentons.com
**DENTONS DURHAM JONES PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600

**Benjamin J. Lewis (*Appearing Pro Hac Vice*)**
  ben.lewis@dentons.com
**DENTONS BINGHAM GREENEBAUM LLP**
3500 PNC Tower
101 S. Fifth Street
Louisville, KY  40202
Telephone: (502) 589-4200

*Attorneys for Plaintiff Newpath Mutual Insurance Co.*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NEWPATH MUTUAL INSURANCE CO.,<br><br>  Plaintiff,<br><br>vs.<br><br>JESSICA HIGGINS, ROBYN LYNN SZTYNDOR, JARROD WILSON, M.D., CURATED FUND OF FUNDS, LP, CURATED FINANCIAL, INC., MAGELLAN ADMINISTRATION CO.,<br><br>  Defendants. | **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS CURATED FUND OF FUNDS, LP AND CURATED FINANCIAL, INC.**<br><br>Case No: 2:22cv00709 TC<br><br>Judge Tena Campbell |

Plaintiff Newpath Mutual Insurance Co. ("Newpath"), by counsel and for its Motion for

Entry of Default Judgment against Defendants Curated Fund of Funds, LP ("Curated Fund of

UC_6803746.1

Funds") and Curated Financial, Inc. ("Curated Financial") (collectively, the "Curated Entities"), states as follows:

## RELIEF SOUGHT

Newpath respectfully requests that this Court enter a default judgment against the Curated Entities for their failure to timely Answer or otherwise respond to the Complaint within 21 days of service of the same.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. Newpath filed the instant Complaint against the Curated Entities (and others) on November 9, 2022. [DN 2] ("the Complaint").

2. Newpath's Complaint alleged, inter alia, that Jessica Higgins ("Higgins"), a self-described social media "influencer" and "business growth consultant," falsely asserted an inheritance and ownership interest in Magellan Administration Company ("Magellan"), upon the mysterious death of her live-in boyfriend and insurance industry wunderkind, Alexander Burns ("Decedent Burns"). (Complaint at ¶¶ 4, 13, 45, 62.)

3. Newpath's Complaint further alleged that in early 2022, Higgins approached Kristof Wild, President of Newpath ("Wild"), falsely representing her inheritance and securing Wild's signature to an Amendment to Administrative Services Agreement (the "Amendment"). This Amendment purported to amend an agreement between Magellan and Newpath that, in fact, was never executed. (Id. at ¶¶ 62, 63, 66.)

4. Using the Amendment, Higgins was able to obtain access to Newpath's bank accounts and engaged in a number of unauthorized and undisclosed decisions, including purporting to appoint new directors to Newpath's Board of Directors (the "Board") and attempting to retain new legal counsel and auditing services for Newpath. (Id. at ¶¶ 64, 65.)

5.  Notably, between March 11 and September 6, 2022, Higgins caused Newpath to direct over $144,400—precisely, $144,404.66—to either Curated Financial and/or Curated Fund of Funds. These funds were transferred under the guise that payments were owed on the (nonexistent) original Administrative Services Agreement between Magellan and Newpath. (Id. at ¶ 68.)

6.  As a result of the Curated Entities' and Higgins' financial misconduct, Newpath alleged claims of conversion/misappropriation of assets and aiding and abetting breach of fiduciary duty in its Complaint. (Id. at ¶¶ 94-97 (Count III); ¶¶ 103-105 (Count V).)

7.  Once Newpath filed its Complaint, it served all of the Defendants in the action. Nevertheless, the only Defendant that filed an Answer was Magellan. [DN 18.] As the Curated Entities failed to file an Answer or other responsive pleading within 21 days of service of the Complaint, Newpath sought and successfully obtained entries of default against them on June 5, 2023 [DN 36, 37]. (See **Exhibit A**, Certificates of Default.)

8.  On August 11, 2023, Higgins and several other Defendants, including the Curated Entities, moved to set aside entries of default [DN 54] (the "Motion to Set Aside Defaults") and the Complaint for lack of personal jurisdiction [DN 55] (the "Motion to Dismiss") (collectively, the "Motions"). Newpath opposed these Motions and subsequently moved the court for discovery on the issue of jurisdiction if the Court was not convinced it had personal jurisdiction over the Defendants. [DN 72.]

9.  The Court held a hearing on the Motion to Dismiss filed by Higgins and the Curated Entities, as well as other motions to dismiss on October 23, 2023.

10. Later on, the attorneys representing Higgins and the Curated Entities sought to withdraw from the case, citing outstanding obligations that had not been fulfilled by the

3

Defendants. [DN 82.] The Court granted this motion on January 30, 2024 and ordered Defendants to file a notice of appearance within 21 days. [DN 83.] Since then, no lawyer has entered an appearance on behalf of the Curated Entities, and no answer has been filed on their behalf.

11. After the aforementioned counsel withdrew from representing the Curated Entities, Newpath filed a motion to strike the previous filings and motions on behalf of the Curated Entities, including their Motion to Set Aside Defaults. [DN 84.]

12. On March 19, 2024, the Court issued its Order and Memorandum Decision Denying Motion to Dismiss [DN 86] (the "Order"), which held, inter alia, that the Curated Entities' Motion to Set Aside Defaults was overruled, as Newpath had properly served the Curated Entities' agent for service of process. (Id. at pp. 10-11.) The Court also engaged in an extensive assessment of personal jurisdiction, finding in favor of personal jurisdiction over Higgins and another Defendant, Jarrod Wilson ("Dr. Wilson"). (Id. at pp. 13-22.)

## ARGUMENT

**A.   STANDARD OF REVIEW**

"Default judgment may be entered against a party who fails to appear or otherwise defend." See Malluk v. Berekely Highland Prods., LLC, 611 F. Supp. 3d at 1143 (D. Colo. 2020) (citing Fed. R. Civ. P. 55). To obtain an order for default judgment, the moving party must follow the two-step process laid out in Fed. R. Civ. P. 55 and DUCivR 55-1(a): first, the moving party must obtain a certificate of default from the Clerk of Court; second after a certificate of default is entered by the Clerk, the party must file a motion for default judgment under Fed. R. Civ. P. 55(b). See id. (citation omitted); see also DuCivR 55-1(a).

Once a certificate of default is entered, "a defendant may not defend a claim on the merits and the well-pleaded factual allegations are taken as true." See Avus Designs, Inc. v. Grezxx, LLC, 644 F. Supp. 3d 963, 973 (D. Wyo. 2022) (quoting Olcott v. Del. Flood Co., 327 F.2d 1115, 1125 (10th Cir. 2003)). While facts regarding liability are regarded as true, allegations concerning the amount of damages are not. See id. (quotation omitted).

Importantly, before a default judgment can be entered, certain prerequisites must be satisfied. First, the court must determine whether it has jurisdiction over the subject matter and the parties. See Williams v. Life Savings & Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1986). This includes an assessment of sufficiency of service of process. See, e.g., Villanueva v. Account Discovery Sys., LLC., 77. F. Supp. 3d 1058, 1068 (D. Colo. 2015).

Second, "[t]he default judgment must be supported by a sufficient basis in the pleadings." Avus Designs, 644 F. Supp. 3d at 973 (citation omitted); see Nevada Gen. Ins. Co. v. Anaya, 326 F.R.D. 685, 693 (D.N.M. 2018).

Third, the court cannot enter damages relief "until the amount of damages has been ascertained." See Avus Designs, 644 F. Supp. 3d at 973.  Damages can be awarded without a live evidentiary hearing where "the submission of affidavits or other proper documentary evidence . . . will create a record sufficient for the court to decide the matters before it." See Malluk (citations and quotations omitted).

**B.    NEWPATH PROPERLY FOLLOWED THE TWO-STEP PROCESS FOR OBTAINING A DEFAULT JUDGMENT, AS WELL AS OTHER PROCEDURAL REQUIREMENTS.**

As required by Fed. R. Civ. P. 55 and DUCivR55-1(a), Newpath first obtained Certificates of Default against the Curated Entities. See **Exhibit A**. These Certificates of Default are attached to this Motion for Entry of Default Judgment, as is required by DUCivR 55-

1(c)(1)(A). Further, this Motion for Entry of Default Judgment is supported by another exhibit, the Declaration of Robert J. Barker (the "Declaration"), attached hereto as **Exhibit B**. This Declaration provides a detailed and reliable calculation of Newpath's damages, as is required by the authorities above when the plaintiff does not seek a hearing on damages issues.

C.     **THIS COURT POSSESSES JURISDICTION OVER THE CURATED ENTITIES.**

    1.     **This Court Possesses Subject Matter Jurisdiction Over the Suit.**

Newpath pleads the existence of subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), the federal statutory basis for diversity jurisdiction in actions involving citizens of different states. See Complaint at ¶ 10. For there to exist subject matter jurisdiction under Section 1332(a)(1), there must be (1) complete diversity of citizenship among the parties and (2) the amount in controversy must exceed the sum or value of $75,000, exclusive of interests and costs. See McPhail v. Deere & Co., 529 F.3d 947, 950-57 (10th Cir. 2008).

When assessing subject matter jurisdiction, a corporation is deemed "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." See Gwilt v. Harvard Square Retirement & Assisted Living, 537 F. Supp. 3d 1231, 1247 (D. Colo. 2021).

As for the amount in controversy, "the amount claimed by the plaintiff controls if the claim is apparently made in good faith." See Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1183 (10th Cir. 2000). "A plaintiff's allegations in the complaint alone can be sufficient to make this showing." See id.

Here, Newpath is a "Utah corporation, domiciled in Utah, with its principal place of business in Utah . . . ." (Complaint at ¶ 10.) The Curated Entities are both Delaware corporations, (Id. at ¶¶ 7, 8), and neither of the Curated Entities are otherwise incorporated or headquartered in

Utah. Similarly, the other Defendants are domiciled in states other than Utah, and thus, there is "complete diversity of citizenship between Plaintiff[] and the Defendants," (Id. at ¶ 10), as to all claims leveled in the Complaint.

As for the amount in controversy, Newpath specifically alleges that the Curated Entities "converted and/or otherwise misappropriated over $134,000 from Newpath," an amount exceeding the sum or value of $75,000. (Id. at ¶ 13.)

### 2. The Curated Entities Were Properly Served, as Previously Recognized by the Court.

Under Fed. R. Civ. P. 4(h)(1)(B), service upon a corporation may be accomplished "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

In its Order, this Court held that Newpath's president, Mr. Wild, "directed Newpath to serve Curated Financial and Curated Fund of Funds through their Delaware registered agent," and in turn, denied the Curated Entities' Motion to Set Aside Defaults. (See Order, p. 10 (quoting Motion to Set Aside Defaults, at 15 ¶ 29).) Thus, there is no doubt that the Curated Entities were properly served.

### 3. This Court Possesses Personal Jurisdiction Over the Curated Entities.

A federal court sitting in diversity may only assert personal jurisdiction over a defendant "who could be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located," and if the exercise of personal jurisdiction under state law comport[s] with the Fourteenth Amendment Due Process Clause. United States v. Botefuhr, 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

In its Order, this Court analyzed its personal jurisdiction over Higgins and Dr. Wilson, concluding that it indeed had jurisdiction over both Defendants. Order, pp. 13-22. Like Higgins

and Dr. Wilson, the Curated Entities were involved in the intentional and tortious seizure of funds from Newpath, conduct which this Court regards as permitting the exercise of personal jurisdiction over out-of-state defendants. See id., pp. 16-19. Further, as with the other Defendants, traditional notions of fair play and substantial justice strongly lean in favor of the exercise of personal jurisdiction. Id. at pp. 19-22. Thus, this Court properly has personal jurisdiction over the Curated Entities consistent with the Fourteenth Amendment.

D. **NEWPATH'S FACTUAL ALLEGATIONS SUPPORT ISSUANCE OF A DEFAULT JUDGMENT.**

1. **Newpath's Claim for Conversion is Plausible, and Thus is Entitled to Default Judgment.**

To state a plausible claim for conversion under Utah law, a plaintiff must allege "an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession." See Jones v. Salt Lake City Corp., 78 P.3d 988 (Utah App. 2003). A party alleging conversion "must show that he or she is entitled to immediate possession of the property at the time of the alleged conversion." Id. at 992 (quoting Fibro Trust, Inc. v. Brahman Financial, Inc., 974 P.2d 288, 296 (Utah 1999)). Notably, money is a type of property that can be converted under Utah law. See id. at 992 n.4; see also Matter of Estate of Osguthorpe, 491 P.3d 894, 902 & n.7 (Utah 2021) (implicitly recognizing that funds contained in bank accounts are the property of the account holders).

Here, the Curated Entities, under the ownership, control, and direction of Higgins, took $144,404.66 from Newpath's bank accounts without lawful justification. Taking Newpath's allegations as true, Higgins falsely alleged that she had inherited an ownership interest in, and control of, Magellan. (See Complaint at ¶¶ (36, 37, 38, 45, 48, 51, 57, 61, 62).) She then utilized a false and misleading Amendment to Administrative Services Agreement, predicated upon a

non-existent prior agreement, to seize Newpath's funds and direct them towards the Curated Entities. In doing so, she caused Newpath to pay for the satisfaction of amounts that Newpath never even owed. (See Order, p. 6 (citing Complaint at ¶¶ 62, 63, 64, 66, 68).) At the time this occurred, Newpath was clearly entitled to possession of the money in its bank accounts. Cf. Osguthorpe, supra. And Higgins' actions clearly deprived Newpath of the use and possession of its funds. Although Higgins was behind the plan to deprive the Newpath of its property, as the "own[er] and operat[or]" of the Curated Entities—in other words, their agent, (see Order, p. 10; Complaint at ¶¶ 4, 7, 8)—her actions in directing the conversion of Newpath's assets are still imputable to the Curated Entities. See Diversified Holdings, L.C. v. Turner, 63 P.3d 686, 701 (Utah 2002). Thus, Newpath has plausibly stated a claim for conversion against the Curated Entities and is entitled to a default judgment for the same.

### 3. Newpath's Claim for Aiding and Abetting Breach of Fiduciary Duty is Plausible, and Thus is Entitled to Default Judgment.

Under Utah law, to plausibly plead a claim for aiding and abetting a breach of fiduciary duty, "[p]arties who knowingly join a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties, are jointly and severally liable with that fiduciary." Russell/Packard Development, Inc. v. Carson, 78 P.3d 616, 626 (Utah 2003) (citation omitted). Thus, a claim for aiding and abetting a breach of fiduciary duty is necessarily contingent on another person's breach of fiduciary duty.

To establish a claim for breach of fiduciary duty, a plaintiff must allege four things: (1) existence of a fiduciary duty, (2) breach of that fiduciary duty, (3) that the breach actually and proximately caused the plaintiff's injury, and (4) damages. See Giles v. Mineral Resources Intern., Inc., 338 P.3d 825, 827 (Utah App. 2014). A fiduciary duty exists, implied in law, where a "position of particular confidence" is "placed by one individual in another" and the "fiduciary

9

is in a position to have and exercise and [,] does have and exercise [,] influence over another." See First Sec. of Utah, N.A. v. Banberry Development Corp., 786 P.2d 1326, 1333 (Utah 1990) (quotation omitted). The causation analysis for breach of fiduciary duty is the same as for negligence. See Christensen & Jensen P.C. v. Barret & Daines, 194 P.3d 931, 938 & n.7 (Utah 2008).

Here, Higgins (mis)represented to Newpath that she had "inherited ownership and control of Magellan from the Burns Estate" and in so doing, convinced President Wild of the existence of a "valid administrative arrangement between Magellan and Newpath." (Complaint at ¶¶ 62, 63.) Once Higgins achieved a position of particular confidence, having obtained control and influence over Newpath through her deceitful conduct, she misappropriated $144,404.66 from Newpath's bank accounts – all in violation of her claimed fiduciary obligations.

The Curated Entities assisted in this transfer of funds, as they constituted the conduits through which the $144,404.66 was successfully transferred. (See id. at ¶ 68.) Moreover, they knowingly joined Higgins in her fraudulent acts. Higgins' obvious and knowing violation of the law can, in fact, be imputed to the Curated Entities. See Wardley Better Homes and Gardens v. Cannon, 61 P.3d 1009, 1016 (Utah 2002). Consequently, Newpath has stated a plausible claim the Curated Entities aided and abetted Higgins' breach of fiduciary duty.

E.   **NEWPATH IS ENTITLED TO DAMAGES FOR THE CURATED ENTITIES' INJURIOUS CONDUCT.**

On a motion for default judgment, damages must be proven by a hearing or, in the alternative, detailed affidavits or documentary evidence establishing the necessary facts. See Klapprott v. United States, 335 U.S. 601, 611-12 (1949). The amount requested "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

UC_6803746.1

Here, the attached Declaration of Robert J. Barker definitively establishes that $144,404.66 left Newpath's bank accounts and was directed to the Curated Entities without any contractual or other lawful basis. (See Declaration, Exh. B, at ¶¶ 7-10.) This Declaration consists of a detailed breakdown of the sums that were transferred from Newpath to the Curated Entities. (Id. at ¶ 8.) Further, this Declaration was executed by an experienced accountant intimately familiar with Newpath's financial operations. (See id. at ¶¶ 1-6.) Such a Declaration is sufficient proof of damages for the award of a default judgment. Cf. Reg'l Dist. Council v. Mile High Rodbusters, Inc., 82 F. Supp. 3d 1235, 1244-45 (D. Colo. 2015) (magistrate opinion).

Furthermore, Newpath should be awarded prejudgment interest in a total sum of $18,524.65, covering the period of October 4, 2022 (when the damage was done) through July 31, 2024 (the date this Motion was filed). The basic mathematical calculations supporting the requested award of prejudgment interest are attached as **Exhibit C**.

Finally, Newpath is entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. 1961. For the calendar week preceding the filing of this Motion, that rate was 4.834%[1], which equates to $21.58 in daily post-judgment interest owed upon the underlying judgment amount sought herein.[2]

---

[1] See https://fred.stlouisfed.org/series/DGS1 (reflecting daily rates of 4.88 on 7/22/24; 4.85 on 7/23/24; 4.82 on 7/24/24; 4.83 on 7/25/24; and 4.79 on 7/26/24, equating to a weekly average of 4.834%).

[2] $144,404.66 (original damage figure) + $18,524.65 (prejudgment interest) = $162,929.31 * .04834 (post-judgment interest rate) = $7,876.00 / 365 (days in a year) = $21.58 (daily post-judgment interest amount).

## **CONCLUSION**

For the reasons set forth above, the Court should enter a default judgment against Defendants Curated Fund of Funds and Curated Financial, holding them jointly and severally liable for the amount of $162,929.31, plus $21.58 in daily interest for each day after the judgment is entered.

A proposed order is tendered herewith.

DATED: July 31, 2024.

Respectfully submitted,

/s/ Mark R. Nelson
Andrew V. Wright
Mark R. Nelson
Benjamin J. Lewis (*appearing pro hac vice*)
*Attorneys for Plaintiff*

UC_6803746.1

## WORD COUNT CERTIFICATE

I, _Mark R. Nelson_, certify that this **Motion For Entry of Default Judgment Against Defendants Curated Fund Of Funds, LP and Curated Financial, Inc.** contains 3095 words and complies with DUCivR 7-1(a)(4).

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, I caused a true and correct copy of the foregoing to be served via CM/ECF on the following:

Aaron Johnstun
JOHNSTUN LAW, LLC
1443 South 550 East
Orem, Utah 84097
aaron@johnstunlaw.com

*Counsel for Magellan Administration Co*

Jessica Higgins
2628 SE 19th Pl.
Cape Coral, FL 33904-3225
Email: jessica.higgins@icloud.com

Jarrod Wilson, M.D.
3450 NW 208th St.
Miami, FL 33056-1240
Email: drwilson@theremedyiv.com

And via email on the following:

Curated Fund of Funds, LP
8 The Green, Ste. R
Dover, DE 19901
Email: jessica@cultured-group.com
Tel.: (858) 209-4188

Curated Financial, Inc.
8 The Green, Ste. R
Dover, DE 19901
Email: jessica@cultured-group.com
Tel.: (858) 209-4188

/s/ *Mark R. Nelson*
*Counsel for Plaintiff*

UC_6803746.1